# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

LETRICIA ALLEN,                    :

      Plaintiff,              :          Case No. 3:13cv000352

 vs.                                :          District Judge Walter Herbert Rice
                                              Chief Magistrate Judge Sharon L. Ovington

CAROLYN W. COLVIN,                 :
Acting Commissioner of the Social
Security Administration,           :

      Defendant.              :

---

## REPORT AND RECOMMENDATIONS[1]

---

I.    <u>Introduction</u>

      Plaintiff Letricia Allen brings this case challenging the Social Security

Administration's denial of her applications for Supplemental Security Income and Disability

Insurance Benefits.  She asserts here, as she did before the administration, that she has been

under a benefits-qualifying disability – beginning on February 7, 2010 – due to a

combination of mental impairments and the residual physical effects of a gunshot wound to

her face.

      The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #9),

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

the Commissioner's Memorandum in Opposition (Doc. #13), the administrative record (Doc. #6), and the record as a whole.

## II.     Background

### A.     Plaintiff And Her Testimony

Plaintiff was 31 years old on her alleged disability onset date (February 7, 2010). She was consequently considered a "younger person" for purposes of resolving her DIB and SSI applications.  She earned a high school GED and has some additional training. (Doc. #6, PageID at 65).  Her past work involved teaching toddlers or infants.  *Id*.; *see* PageID at 67.  During the ALJ's hearing, Plaintiff testified that she lost her last significant job as an infant teacher because she "had a little outburst with one of the parents" and was given time off work.  *Id*., PageID at 68.  She was not recalled to that job.

On the date of the ALJ's hearing, August 31, 2012, Plaintiff had been homeless since June 2010.  *Id*.  She has lived in a shelter or with friends – "just different places, different people."  *Id*., PageID at 72.

On February 7, 2010, Plaintiff attempted to commit suicide by shooting herself in the face.[2]  Medical records document that the "bullet enter[ed] the left of her nasal bridge

_____

[2] The ALJ reported that the date of Plaintiff's suicide attempt was September 8, 2010.  (Doc. #6, PageID at 46).  This is incorrect.  Hospital records show that Plaintiff was admitted through the emergency room on February 7, 2010 due to gunshot injuries to her face.  *Id*., PageID at 432, 454.  There is no dispute that Plaintiff asserts a disability onset date of February 7, 2010, which the ALJ correctly recognized.  *Id.*, PageID at 201.

and lodg[ed] into the soft tissue posterior to the angle of the left mandible. [She] suffered multiple injuries from this gunshot wound to the nasal septum, right orbital floor, sphenoid base, pterygoid process, and right occipital condyle as well as the C1 [cervical spine, level 1] transverse process that resulted in fracture." (Doc. #6, PageID at 433).

Plaintiff testified that after the suicide attempt, she needed assistance with meeting nearly all of her personal needs for approximately one year. *Id*., PageID at 69. She could not comb her own hair, cook meals, or fully bathe herself. *Id*. Her right, dominant hand was severely impacted by the injury, but it gradually recovered. *Id*. She acknowledged that at the time of the ALJ's hearing, she did not need help taking care of her personal needs. *Id*. At the time of the ALJ's hearing, she could do some light chores but not on an everyday basis. *Id*., PageID at 72.

Plaintiff testified that when she was discharged from the hospital (on February 19, 2010), she experienced severe pain along the right side of her neck and face. *Id.,* PageID at 70. She explained, "My neck at first I couldn't turn it to the right side at all and to even force it would send pains down my neck ...." *Id*. She further testified about her continuing physical problems as of the date of ALJ's hearing: she has a lot of drainage from her sinus cavity, and her right eye tends to get dry. She explained, "[i]t's not as lubricated as the left ... side. I get a popping in my ear – my right ear where the bullet was lodged behind my ear. I hear like ringing, buzzing." *Id*., PageID at 70-71.

Since the suicide attempt, Plaintiff has experienced severe headaches. *Id*., PageID

3

at 78-79.  She described her headaches as follows:

> [S]ometimes they occur at night and I wake up with my eyes
> pulsating, my temples hurting, the back and top of my head.  It make my
> eyes sensitive to the light from the TV.  It makes my eyes sensitive to the
> sun, to ... light bulbs.  It makes me angry.  It makes me evil....  The Ultram
> helps with the, the headaches, the migraines.  And the best I can do when I
> have migraines is to lay [lie] there with a cold rag over my eyes, sometimes
> in the dark depending on how stressful the migraine ....

(Doc. #6, PageID at 78).  The headaches can last two to three days.  She experiences four

or five migraines per month.  She did not have these headaches before the suicide

attempt.

Plaintiff has pain and numbness in her right, dominant, arm once or twice a week,

sometimes lasting an hour and sometimes periodically throughout the day.  At times it

will involve her whole arm and hand; other times it will involve her shoulder and neck.

*Id*., PageID at 81.

Plaintiff also testified about her severe mood problems.  She suffers with

depression and has some better and some worse days.  She explained:

> Sometimes I can wake up and get up and take a shower and change
> my clothes, you know, and then other times it's like oh my God.  A night
> went by.  I haven't slept.  My body hurts.  I'm crying.  I know I need to get
> up and go to anger management or to go see my therapist and it's just like
> oh my God.  It's just, I don't want to do that because I feel so down, like the
> world is on my shoulders.

*Id.*, PageID at 79-80.  Plaintiff experiences bad-depression days two to three times per

week where she cannot reliably get up to shower or attend to other daily tasks.  *Id*.,

PageID at 79-80.  She has a hard time going to the grocery store and being around other

people.  *Id*., PageID at 71.  The noise of being around others irritates her.  *Id*.  She also

has problems being around her family.  *Id*., PageID at 72.  When she tries to deal with

others, she becomes aggravated and stressed.  She attends anger-management groups at

her mental health provider's office.  She sometimes has friction with other group

members and other times "it's laughter and understanding."  (Doc. #6, PageID at 74-75).

Plaintiff also has flashbacks or daydreams about the past.  *Id*., PageID at 76.  At

some point before her suicide attempt, county officials removed Plaintiff's children from

her care and placed them with her mother.  Eventually, Plaintiff's mother gained full

custody of the children due to, in part, Plaintiff's mental instability.  *Id*., PageID at 77-78.

Plaintiff testified that she hears the voice of a stranger who is angry and tells her

what to do.  The voice is louder and she hears it more frequently when she is under stress

or overwhelmed, which occurs maybe twice a week.  She cannot always ignore the voice.

It is sometimes a "loud angering" and sometimes a "soft angering."  *Id*., PageID at 75-76.

### B.    **Medical Evidence**

The administrative record contains many medical records plus opinions by

Plaintiff's treating and non-treating medical sources.  A detailed description of those

records and opinions is unnecessary because the undersigned has reviewed the entire

administrative record and because both the ALJ and Plaintiff's counsel have accurately

summarized the relevant records concerning Plaintiff's physical and mental impairments

with citations to specific evidence.  The Commissioner likewise defers to the ALJ's factual

recitation.

## III.    **"Disability" Defined and the ALJ's Decision**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70.

The focal point of Plaintiff's challenges to the denial of her applications is the non-disability decision by Administrative Law Judge (ALJ) Mary Ann Poulose.  ALJ Poulose resolved Plaintiff's disability claim by considering each of the 5 sequential Steps set forth in the Social Security Regulations.  *See* 20 C.F.R. §404.1520(a)(4), 416.920(a)(4).[3]  Although ALJ's Poulose reached significant conclusions at each sequential Step, only her findings at Steps 2, 3, and 4 are pertinent in the present case.

At Step 2 of the sequential evaluation, ALJ Poulose found that Plaintiff had the severe impairments of "major depressive disorder and alcohol and cannabis dependence." (Doc. #6, PageID at 46).  The ALJ also found at Step 2 that Plaintiff's "status-post gunshot

_____

[3] The remaining citations to the Regulations will identify the pertinent DIB Regulation with full knowledge of the corresponding SSI Regulation.

wound to the face with maxillofacial fracture and fracture of the cervical spine constitute

non-severe impairments ....” *Id.*

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or

combination of impairments that met or equaled the criteria in the Social Security

Regulation's Listing of Impairments.[4]  (Doc. #6, PageID at 46-48).

At Step 4 the ALJ found:

> The claimant has the residual functional capacity[5] to perform the full
> range of work at all exertional levels but with the following nonexertional
> limitations: unskilled [work], requiring only simple decision-making and only
> occasional co-worker interaction, with no public interaction, tandem tasks, or
> fast-paced production line work.

*Id.*, PageID at 48 (footnote added).  The ALJ also found at Step 4 that Plaintiff's testimony

lacked credibility to the extent it was inconsistent with the above residual functional

capacity assessment.  *Id.*, PageID at 49.

The ALJ's findings throughout her sequential evaluation led her to ultimately

conclude that Plaintiff was not under a disability and was therefore not eligible to receive

DIB or SSI.

---

[4] The Listings appear in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[5] A person's “residual functional capacity” is an assessment of the most the person can do in a
work setting despite his or her limitations. 20 C.F.R. §404.1545(a). A person's work setting requires
work on a “regular and continuing basis,” meaning 8 hours a day for 5 days a week. Social Security
Ruling 96-8p at *1 1996 WL 374184; *see Howard v. Comm of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir.
2002).

## IV.    **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the

8

claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting, in part, *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.  Discussion

### A.  Plaintiff's Physical-Work Abilities

Plaintiff contends, "The ALJ's finding that [she] has no impairment or limitations related to her gunshot wound to the face is unreasonable and unsupported."  (Doc. #6, PageID at 1214).

The Commissioner points out that the ALJ identified severe mental impairments at Step 2 of the sequential analysis and, therefore, did not screen out Plaintiff's disability claims.  The Commissioner argues, "Because the ALJ continued with her analysis beyond Step 2, any alleged failure to find additional impairments severe, standing alone, is not reversible error."  (Doc. #13, PageID 1232).

Step 2 of the sequential analysis – determining whether the claimant has a severe impairment – creates "a *de minimis* hurdle in the disability determination process....  Under the ... *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  Generally, an ALJ does not commit reversible error by finding a non-severe impairment under two circumstances: (1) the ALJ also found that claimant has at least one severe impairment; and (2) the ALJ

considered both the severe and non-severe impairments at the remaining Steps in the
sequential evaluation.  *See Maziarz v. Secretary of Health and Human Services*, 837 F.2d
240, 244 (6th Cir. 1987); *see also Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007).
But, "once the ALJ determines that a claimant has at least one severe impairment, the ALJ
must consider all impairments, severe and non-severe, in the remaining [S]teps."  *Pompa v.
Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (citation omitted).

In the present case, the ALJ erred at Steps 3 and 4 of the sequential analysis by not
engaging in a meaningful evaluation of Plaintiff's severe and non-severe impairments in
combination.  *Pompa*, 73 F. App'x at 803.  At Step 3, there is no mention of Plaintiff's
non-severe physical impairments that were caused by the gunshot to her face.  The ALJ
considered only whether Plaintiff's severe mental impairments met or equaled the Listings,
particularly Listing 12.04 (affective disorders) and 12.09 (substance addition disorders).
(Doc. #6, PageID at 46-48).

At Step 4, the ALJ's assessment of Plaintiff's residual functional capacity and
medical-source opinions is devoid of meaningful consideration of Plaintiff's combined
non-severe and severe physical impairments.  *See id.*, PageID at 48-51.

Defendant disagrees, contending:

> The ALJ indisputably addressed Plaintiff's physical injuries stemming
> from her gunshot wound.  To illustrate, the ALJ acknowledged Plaintiff's
> resulting maxillofacial skull base and cervical spine fractures, which
> warranted surgery, as well as Plaintiff's headaches.  However, the ALJ
> decided that these were non-severe impairments within the meaning of the
> Regulations....  In the end the ALJ reasonably concluded that Plaintiff's

10

physical impairments did not more than minimally impact her ability to
perform basic work activity.  In sum, Plaintiff does not and cannot establish
that the record supported greater functional limitations (stemming from any
of her severe or non-severe impairments) than those set forth in the ALJ's
decision.

(Doc. #13, PageID at 1233-34) (internal citations omitted).

The problem with Defendant's contentions and the ALJ's reasoning is their focus on
the absence of a severe physical impairment without considering the remaining non-severe
impairments in combination with the severe impairments at Step 4 of the sequential
evaluation.  Stated another way, the ALJ's reasoning begs the question – how do Plaintiff's
headaches, neck pain, numbness and shooting pain in her right arm plus her severe mental
impairments impact her ability to perform work activities?  The ALJ's assessment of
Plaintiff's residual functional capacity at Step 4 leaves this key question unaddressed.

Additionally, this inquiry was essential at Step 4 due to the well-documented
residuals of Plaintiff's gunshot injuries.  The record reflects multiple emergency room
visits for headaches, pain and numbness in Plaintiff's right arm, and/or neck pain.  *See id.*,
PageID at 492-96, 595-614, 616-45, 646-66, 699-734, & 1100-13.  These symptoms are
also recounted in treatment notes alongside clinical signs and findings such as right arm
weakness, reduced range of motion in Plaintiff's cervical spine, tenderness, and/or muscle
spasms.  *See id*. PageID at 831-32, 838-40.  State agency consulting examiner Dr. Oza
recorded diminished grip strength in Plaintiff's right hand, limited range of motion in
Plaintiff's right shoulder, and diminished cervical spine range of motion.  *Id*., PageID at

11

533.  He also observed that Plaintiff had muscle tension and vascular headaches, especially when she is under stress.  *Id*., PageID at 534.

At best for the Commissioner, the ALJ's Step-4 evaluation concluded that Plaintiff has no medically discernable physical impairments and no limitations in her ability to physically meet the demands of full-time, competitive work activity.  *Id*., PageID at 46-51. But, these findings are directly contradicted by opinion evidence from two state agency physicians and a state agency consulting examiner.  Examining consultant Dr. Oza specifically opined in April 2010 that Plaintiff had not recovered from her gunshot injuries and that Plaintiff was limited in her ability to perform work-related activities by the residuals of her injuries.  *Id*., PageID at 534.  This would continue, according to Dr. Oza, "at least for [a] few months till her fracture heals and her sight problems are taken care of." *Id*.  Although Plaintiff's condition improved over time, in April 2011, record-reviewing physician Dr. McCloud opined that Plaintiff's ability to lift occasionally was limited to twenty pounds and frequently to ten pounds, she could stand and/or walk about six hours in an eight-hour workday, and she could sit about six hours in an eight-hour workday.  *Id*., PageID at 536.  In May 2011, state agency consultative examined Dr. Green reported that Plaintiff's work limitations were limited by cervical pain and limited range of motion.  *Id*., PageID at 106.  Dr. Green opined that Plaintiff could lift and/or carry up to ten pounds during 1/3 to 2/3 of an eight-hour workday, and she could stand and/or walk, and sit for about six hours in an eight-hour workday.  *Id*.  She could never climb ladders, ropes, or

12

scaffolds, and she was limited to reaching overhead both left and right.  *Id.*

In the above manner, the three state agency medical sources believed that Plaintiff can perform only a reduced range of light exertional work.  No medical professional has opined that Plaintiff is without limitations on her physical work abilities.

In sum, for reasons articulated above, the ALJ's failure to consider Plaintiff's severe and non-severe impairments in combination at Steps 3 and 4 constituted error, and the ALJ's finding at Step 4 that Plaintiff has no physical impairments or limitations is unreasonable and unsupported by substantial evidence.

### B.    Plaintiff's Mental-Work Abilities

Plaintiff contends that substantial evidence fails to support the ALJ findings regarding her mental-work abilities.  More specifically, Plaintiff challenges the ALJ's findings that she could perform unskilled work, "requiring only simple decision-making and only occasional co-worker interaction, with no public interaction, tandem tasks, or fast-paced production line work."  (Doc. #6, PageID at 48).

Defendant maintains that the ALJ properly based her assessment of Plaintiff's residual functional capacity by giving "some weight" to Dr. Flexman's opinion and "weight" Dr. Semmelman's opinions.  Defendant further argues that the ALJ was not required to incorporate each and every restriction set by Drs. Flexman and Semmelman because it was the ALJ's duty to establish Plaintiff's residual functional capacity.

The record before the ALJ contained not only documentation of two separate

psychiatric hospitalizations, but also over two hundred pages of mental health treatment notes.  (Doc. #6, PageID at 392-427, 432-92, 509-11, 767-828, 852-60, 900-38, 979-88, 1114-99).  These records reflect the persistence of Plaintiff's psychiatric symptoms including thoughts of suicide, mood swings, crying spells, poor sleep, and auditory hallucinations.  *Id*.  They also reflect, consistent with Plaintiff's testimony, her significant problems controlling her anger and relating effectively to others.  *See id*. at PageID at 71-74, 546, 976, 1129-50.

State agency consulting examiner Dr. Flexman reported that Plaintiff displayed an irritable temper with signs of volatility and opined that she would have limitations in her ability to interact appropriately with others.  *Id*., PageID at 546-48.  Consulting reviewer Dr. Semmelman concluded that Plaintiff should be limited to occasional and superficial social interaction in a "more solitary" work setting.  *Id*., PageID at 553.

In contrast to the foregoing, the ALJ concludes that Plaintiff can withstand unrestricted contact with coworkers and supervisors for up to a third of each and every given workday.  *Id*., PageID at 48.  The residual functional capacity she assigns does not limit Plaintiff to a solitary work setting, reflect Plaintiff's need to isolate herself from others, or even restrict Plaintiff to "superficial" social interaction consistent with the opinions of the state agency's own consulting psychological experts.  *Id*.  Further, the assigned residual functional capacity fails to reflect Plaintiff's deficits in withstanding the stress and pressure of basic, day-to-day work activity secondary to her mental health

14

symptoms.  *Id*.  This is problematic because the ALJ does not explain why she credited the

opinions as to some mental-work restrictions but not others.  Social Security Regulations,

as explained in Ruling 96-6p, mandate ALJs to explain the weight given to the opinions of

state-agency medical sources, like Drs. Flexman and Semmelman.

> [T]he opinions of State agency medical and psychological consultants
> and other program physicians and psychologists can be given weight only
> insofar as they are supported by evidence in the case record, considering such
> factors as the supportability of the opinion in the evidence..., the consistency
> of the opinion with the record as a whole, including other medical opinions,
> and any explanation for the opinion provided by the State agency medical or
> psychological consultant or other program physician or psychologist.  The
> adjudicator must also consider all other facts that could have a bearing on the
> weight to which an opinion is entitled, including any specialization of the
> State agency medical or psychological consultant.

Social Security Ruling 96-6p, 1996 WL374180 at *2.  Similar rules apply during an ALJ's

assessment of residual functional capacity:

> Although the administrative law judge ... is responsible for assessing
> an individual's RFC..., the administrative law judge ... must consider and
> evaluate any assessment of the individual's RFC by State agency medical or
> psychological consultant and by other program physicians or psychologists.
> At the administrative level..., RFC assessments by State agency medical or
> psychological consultants or other program physicians or psychologists are to
> be considered and addressed in the decision as medical opinions from
> nonexamining sources about what the individual can still do despite his or her
> impairment(s).  Again, they are to be evaluated considering all the factors set
> out in the regulations for considering opinion evidence.

*Id*., 1996 WL 374180 at *4.

In the present case, the ALJ's assessment of Plaintiff's residual functional capacity

falls short of these standards because the ALJ did not explain why she accepted some of the

limitations – but not others – set by Drs. Flexman and Dr. Semmelman. The Commissioner disagrees, arguing that the ALJ was not required to adopt the opinion of any medical source and therefore did not err in omitting some of the limitations set by Drs. Flexman and Semmelman. In support of this contention, the Commissioner cites *Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 194, 197 (6th Cir. 2004). Plaintiff, however, is correct that *Ford* is distinguished from the present case. In *Ford*, the ALJ rejected a treating physician's opinion in a manner that was consistent with the Regulations, then tailored an assessment of the plaintiff's residual functional capacity with lesser restrictions. In the present case, it is the ALJ's unexplained incongruity between the ALJ's weighing of the medical-source opinions that constitutes error.

Accordingly, Plaintiff's challenges to the ALJ's assessment of her mental residual functional capacity are well taken.[6]

## VI.    Remand is Warranted

If the ALJ failed to apply the correct legal standards or her factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*,

---

[6] In light of the above review, and the resulting need for remand of this case, an analysis of the parties' remaining arguments, including those focusing on the ALJ's assessment of Plaintiff's credibility, is unwarranted.

501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See id.* However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) due to the problems discussed *supra*. In addition, there remains a factual issue regarding whether Plaintiff's earnings during 2010 constitute substantial gainful activity. The ALJ declined to address this issue "until the matter is resolved" – "the matter" being whether Plaintiff's Social Security number was stolen and used by another person during 2010. *See* Doc. #6, PageID at 45.

On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required 5-Step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for DIB and SSI should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be vacated;

2.      No finding be made as to whether Plaintiff Letricia Allen was under a "disability" within the meaning of the Social Security Act;

3.      This matter be **REMANDED** to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4.      The case be **TERMINATED** on the docket of this Court.


November 25, 2014                              s/Sharon L. Ovington
                                        Sharon L. Ovington
                                   Chief United States Magistrate


18

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474  U.S. 140 (1985); *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).